**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| CLARENCE E. OWENS,<br>*Plaintiff,*<br>v.<br>NEWREZ LLC, *et al.*,<br>*Defendants.* | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:26-cv-02519-KMW-MJS<br><br>**OPINION** |

**Clarence E. Owens**
P.O. BOX 123
Willingboro, NJ 08046

*Plaintiff, pro se*

**Brett L. Messinger, Esq.**
**Brian Jeffrey Slipakoff, Esq.**
Duane Morris, LLP
30 South 17th Street
Philadelphia, PA 19103
*Counsel for Defendant*

**WILLIAMS, District Judge:**

This matter comes before the Court by way of Defendant Robertson, Anschutz, Schneid, Crane & Partners, PLLC's ("Defendant RAS") Motion to Dismiss (ECF No. 9); Defendant Duane Morris LLP's ("Defendant DM") Motion to Dismiss (ECF No. 11) (collectively "Defendants"); Plaintiff Clarence E. Owens's ("Plaintiff") opposing Cross-Omnibus Motion (ECF Nos. 8, 9) and Motion to Remand (ECF No. 14); and Defendants' Oppositions (ECF Nos. 18, 23) and Reply (ECF No. 25) thereto. The Court, having considered the parties' written submissions without oral argument pursuant to L.Civ.R. 78.1(b), **GRANTS** both Defendants' Motions to Dismiss, **DENIES** Plaintiff's Cross-Omnibus Motion, and **DENIES** Plaintiff's Motion to Remand.

# I. BACKGROUND[1]

This action arises from Plaintiff's ongoing refusal to accept that Defendant U.S. Bank National Association ("USB") is entitled to foreclose on his property, which is the subject of a parallel state foreclosure proceeding and multiple federal proceedings before this Court. Plaintiff's Complaint alleges that Defendants PHH Mortgage Corporation ("PHH") and NewRez LLC ("NewRez"), along with Defendants RAS and DM acting as legal counsel, conspired with each other to submit fraudulent documents to foreclose on the subject property without standing to do so. Plaintiff asserts causes of action for abuse of process and violations of the Fair Debt Collection Practices Act ("FDCPA") and the New Jersey Consumer Fraud Act ("NJCFA"). The relevant facts and procedural history leading to the instant case are as follows.

## A. The Original Loan Transaction and 2009 Foreclosure Action[2]

This dispute arises from a November 28, 2006, refinance loan transaction between Plaintiff's predecessor, Frances Rogers ("Rogers"), and New Century ("NC") wherein NC lent Rogers the sum of $190,800. (ECF No. 1 ¶ 8.) The loan was supported by a Note signed by her late husband, Mr. Thomas Rogers and secured by a Mortgage signed by both Mr. and Ms. Rogers. (ECF No. 1 ¶ 8.) After defaulting on their payment under the Note and Mortgage, on June 30, 2009, Bank of America, National Association, successor by merger to LaSalle Bank National Association, as Trustee under the Pooling and Services Agreement dated February 1, 2007, GSAMP Trust 2007-NCI ("BOA") filed a foreclosure action against the Rogers in the Superior Court of New Jersey, Chancery Division, Burlington County, bearing Docket No. F-34006-09 (the

---

[1] When ruling on a motion to dismiss, the Court may consider the allegations in the complaint, "exhibits attached to the complaint and matters of public record" without converting the motion to one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court may also consider "undisputedly authentic" documents where Plaintiff's claims are based on those documents and Defendants have attached copies to their motion to dismiss. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196.

[2] In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may take judicial notice of matters of public record, such as the 2009 Foreclosure Complaint. *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).

"First Foreclosure Action").[3] (ECF No. 12-1 (Ex. A – 2009 Foreclosure Complaint).) Plaintiff contends that on that date, June 30, 2009, the debt accelerated, was fully due, and, thus, became unenforceable. (ECF No. 1-1 ¶¶ 9–12.) Following a loan modification between Rogers and the lender, for reasons not relevant in the instant action, the 2009 Foreclosure Action was voluntarily dismissed. (*Id.* ¶ 10.)

**B. Ongoing State Court Proceedings: 2015 Foreclosure Action**

On July 7, 2015, USB—which had become the Trustee for GSAMP Trust in place of BOA—filed a foreclosure action ("Second Foreclosure Action") against Rogers in the Superior Court of New Jersey, Chancery Division, Burlington County, bearing Docket No. F-23883-15. (ECF No. 1 ¶ 12; *see* ECF No. 12-6 (Ex. F – 2015 Foreclosure Complaint).) On August 26, 2024, Rogers filed an Answer denying all allegations in the foreclosure complaint and asserted twelve separate counterclaims against USB, which reasserted the same claims in the TAC, that: (1) USB did not have standing to enforce the mortgage and note; and that (2) the mortgage was void because it was the product of a conspiracy to defraud the Rogers. (ECF No. 9-6, Ex. E – Second Foreclosure Action Answer with Counterclaims.) On July 19, 2024, Plaintiff, Clarence Owens, was added as a defendant based on his claim that he and his wife were the new owners of the subject property. (ECF No. 12-14 at 5–6 (Ex. N – 2015 Foreclosure Summary Judgment).)

After a judgment in USB's favor was reversed on appeal, the state court reconsidered USB's standing on remand. (*Id.* at 14–15.) On June 23, 2025, the state court granted summary judgment to U.S. Bank, finding that it held the note through the Trust's custodian and had been assigned the mortgage before filing the foreclosure complaint. (*Id.*) The court struck the Rogers and Owens' answer and affirmative defenses and referred the matter to the Office of Foreclosure

[3] Mr. Rogers died on June 30, 2009. (ECF No. 1-1 ¶ 9.)

to proceed as an uncontested action. (*Id.* at 3.) Years later, the Second Foreclosure Action remains pending.

### C. The 2024 Federal Action[4]

Plaintiffs filed the 2024 Federal Action on June 20, 2024, bearing Docket No. 1:24-cv-07142. *See Owens v. Robertson Anschutz Schneid Crane & Partners PLLC*, No. 1:24-cv-07142-KMW-MJS [hereinafter "2024 Federal Action"]. Plaintiff filed while the Second Foreclosure Action was still pending, his Amended Complaint naming as Defendants, DM, OFC, PHH, NewRez, NR and USB, as well as two DM attorneys, Messinger and Slipakoff, and RAS and one of RAS's attorneys, John Kundrat ("Kundrat"). (*See* ECF No. 12-11 (Ex. K – Plaintiff's Amended Complaint, No. 24-7142).).

The Amended Complaint consisted of 201 paragraphs, over 109 pages, and attached approximately 500 pages of extraneous exhibits. (*Id.*) It also alleged thirteen (13) causes of action, including declaratory relief, violations of federal and state consumer protection and racketeering statutes, abuse of process, civil conspiracy, emotional distress, respondeat superior, civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, and quiet title. (*See id.* at 71–114.) The fundament of Plaintiffs' claims in the Amended Complaint was that the defendants conspired with each other to submit fraudulent documents to foreclose on the subject property without standing to do so. (*See generally id.*)

[4] The 2024 Federal Action is only one of multiple federal cases filed by Plaintiff and his privies. On December 28, 2012, Rogers filed suit in this District, *pro se*, in a case captioned *Frances Rogers v. Brad A. Morrice, et al.*, bearing Docket No. 1:12-cv-07910 ("First Federal Action"), which named many of the Defendants in the present action, including Defendants DM, PHH, USB and others. (ECF No. 12-3 (Ex. C – Third Amended Complaint).) In that case, Rogers again alleged a fraudulent mortgage-related scheme. (*Id.*) That action was dismissed with prejudice after repeated opportunities to amend, and her appeal was dismissed as untimely. (*See* ECF Nos. 12-4 (Ex. D – April 23, 2013 Opinion), 12-5 (Ex. E – April 23, 2013 Order).)

Specifically, the Amended Complaint asserted that the Defendants involved with the origination of the subject loan and subsequent collection "employed unconscionable (and illegal) practices to demand monies from Plaintiffs (and their now deceased spouses) toward a 'fraud in factum' transaction, under duress (and threat) of a state assisted seizure of Plaintiffs' real property through Defendant's malicious abuse of process, [spearheaded] by the lead Defendants to this action who are officer of the court employing false pleadings and false claims; misrepresentations and omissions; forgery, false acknowledgments; and perjury." (ECF No. 12-11 at 1(Ex. K — Plaintiff's Amended Complaint, No. 24-7142).) Plaintiffs further reiterated their contention that USB does not have standing to enforce the Note and Mortgage. (*Id.* ¶ 40.)

This Court dismissed Plaintiff's case on March 18, 2025 (ECF No. 12-13 (Ex. M – March 18, 2025 Order)), and Plaintiff subsequently appealed. The Third Circuit affirmed this Court's dismissal on all claims, leaving only Plaintiff's abuse of process claim. *See Owens v. Robertson Anschutz Schneid Crane & Partners PLLC*, No. 25-1747, 2026 WL 1506828 (3d Cir. May 29, 2026).

**D. The Instant Action**

On January 29, 2026, Plaintiff filed the instant action in New Jersey state court which Defendants removed to federal court on March 11, 2026. (ECF No. 1-2.) In his Complaint, Plaintiff alleges Defendants continued efforts to collect an unenforceable debt through misleading mortgage statements, foreclosure submissions, and a December 2025 application for final judgment. (ECF No. 1-1 ¶¶ 12–36.) According to Plaintiff, those materials misstated the payment history and amount due and relied on forged mortgage assignments and a forged indorsement on the note. (*Id.*)

Plaintiff further alleges that Defendants procured the June 23, 2025, summary judgment ruling by concealing mortgage assignments dated in 2017 and 2019, which he contends would have demonstrated a lack of standing when the foreclosure action began. (*Id.* ¶¶ 42–44.) Separately, he alleges that Defendant DM misrepresented its authority to represent USB in proceedings before the New Jersey Supreme Court, resulting in the denial of his application for review on January 13, 2026. (*Id.* ¶¶ 45–50.) Based on these allegations, Plaintiff asserts FDCPA and NJCFA claims against all Defendants and an abuse of process claim against Defendants NewRez, PHH, and DM. (*Id.* ¶¶ 51–66.)

Defendant RAS moved to dismiss Plaintiff's Complaint on March 27, 2026 (ECF No. 9). Defendant DM's Motion to Dismiss followed on April 1, 2026, (ECF No. 11) attaching a supporting affidavit including Brian Slipakoff's signed declaration and various other relevant exhibits (ECF No. 12). On April 22, 2026, Plaintiff opposed both motions in his Cross-Omnibus Motion (ECF Nos. 20, 21). On May 11, 2026, Defendants both responded. (ECF Nos. 24, 25.) On April 9, 2026, Plaintiff also moved to remand these proceedings back to New Jersey state court. (ECF No. 14.) On April 20, 2026, Defendant DM opposed that motion, and Defendant RAS on May 4, 2026. (ECF Nos. 18, 23.)

## II. <u>LEGAL STANDARD</u>

### A. Motion to Remand

Pursuant to 28 U.S.C. § 1441 (a), "defendants may generally remove civil actions from state court to federal district court so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014). An action must be removed "within 30 days after the

receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1).

After a defendant files a notice of removal, a plaintiff may move to remand the matter to state court. *See* 28 U.S.C. § 1447. A motion to remand based on a procedural defect must be filed within thirty days of the filing of the notice of removal, 28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212 (3d Cir. 1991) (citing 28 U.S.C. 1447(c)). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).

**B. Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in Plaintiff's complaint and draw all reasonable inferences from those allegations in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court, however, need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Plaintiff's complaint need only contain factual allegations amounting to "more than an unadorned, the-defendant-unlawfully-harmed-me accusation[s]," rather than "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Complaints subject to dismissal under Rule 12(b)(6) are generally analyzed under the pleading standard set forth in Rule 8(a), which demands that a complaint set forth "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Additionally, where, like here, a plaintiff proceeds *pro se*, his pleading is liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted). Even so, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

Plaintiff challenges Defendants' efforts to collect a mortgage debt and prosecute a foreclosure action against property he claims he now owns. He alleges that the mortgage servicers and foreclosure counsel misrepresented the debt's enforceability and payment history, relied on forged loan documents, and concealed information relevant to standing. Based on that conduct, Plaintiff asserts claims under the FDCPA and NJCFA against all Defendants, and an abuse of process claim against Defendant RAS. (ECF No. 1-1 ¶¶ 1–5, 8–50, 51–66.) The Court first addresses Plaintiff's Motion to Remand, then considers whether the judgment in the 2024 Federal

Action precludes the statutory claims and whether New Jersey's litigation privilege bars Plaintiff's abuse of process claim.

**A. The Court has subject matter jurisdiction over Plaintiff's claims.**

The parties dispute whether removal was proper in this case. (*See* ECF Nos. 14, 18, 23.) In support of his Motion, Plaintiff sets forth three arguments in his Motion to Remand. (ECF No. 14 at 10–14.) First, Plaintiff argues that the case was properly before the state court as the state court maintains concurrent jurisdiction over Plaintiff's FDCPA claim. (*Id.* at 10–11.) Second, the Court lacks supplemental jurisdiction over the state law claims. (*Id.* at 12–14.) Third, even with supplemental jurisdiction, the Court should decline to exercise it because the state law claims predominate over the federal claim and present a localized dispute.[5] (*Id.* at 11–12.) These arguments are unpersuasive and the Court concludes jurisdiction is proper over all Plaintiff's claims.

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005) (citing 28 U.S.C. § 1441). Federal courts have "limited jurisdiction" possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869 (3d Cir. 2022). Defendants, as the parties asserting federal question jurisdiction in this removal action, bear

[5] Plaintiff additionally argues, under 28 U.S.C. § 1446(a) and Federal Rule of Civil Procedure Rule 11, that Defendants' failure to sign the Notice of Removal (ECF No. 1 at 3) renders the notice of removal procedurally deficient, requiring the Court to "strike [the] unsigned paper." (ECF No. 14 at 14–15.). Rule 11, however, allows for the deficient party, upon notice, to "promptly correct[]" the deficiency. Fed. R. Civ. P. 11(a) ("The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."). Plaintiff filed his Motion to Remand pointing out this defect on April 9, 2026. (ECF No. 14.) Defendants cured the defect by filing a copy of the signed signature page the next day on April 10, 2026. (ECF No. 13.) The Court finds Defendants "promptly corrected" the defect and that this filing was sufficient to meet the requirements under Rule 11 and 28 U.S.C. § 1446(a).

the burden of establishing this Court's jurisdiction. *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 130 (3d Cir. 2022) ("The party seeking removal has the burden of establishing federal jurisdiction. . . ."). To determine whether Defendants met this burden, the Court looks to "plaintiff's complaint as it existed at the time that the defendant filed the removal petition." *Briones v. Bon Secours Health Sys.*, 69 F. App'x 530, 535 (3d Cir. 2003) (citation omitted).

When conducting this jurisdictional analysis, the Court relies on the "well-pleaded complaint" rule. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The rule provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* A federal question is one that "aris[es] under" federal law. 28 U.S.C. § 1331. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Additionally, the Court may exercise supplemental jurisdiction over those state law claims "so related" to the federal claims that they "form part of the same case or controversy" and, thus, "derive from a common nucleus of operative fact." *See* 28 U.S.C. § 1367(a); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Still, the Court has discretion to decide whether to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c); *Gibbs*, 383 U.S. at 726.

Looking to Plaintiff's first argument, Plaintiff effectively asks this Court to find that concurrent jurisdiction compels remand, particularly where the FDCPA claim is his "sole federal claim." (ECF No. 14 at 11.) It is undisputed that Plaintiff's FDCPA claim "aris[es] under" the laws of the United States as a federal statute provides for it. *See* 15 U.S.C. § 1692 *et seq.*; (ECF No. 14 at 10–11.) Moreover, the FDCPA's text plainly grants concurrent jurisdiction between the state and federal forums. *Id.* at § 1692k(d); *see also Arsenis v. M&T Bank*, No. 24-1151, 2025 WL 88838, at *3 (3d Cir. Jan. 14, 2025) (stating the "FDCPA provide[s] for concurrent federal-state

jurisdiction"); *Owens*, 2026 WL 1506828, at *2 n.3. However, this grant does not bar Defendant's removal nor does it compel remand. *See Weinstein v. Paul Revere Ins. Co.*, 15 F. Supp. 2d 552, 559 (D.N.J. 1998) ("[I]f a federal statute does not prohibit removal, concurrent jurisdiction is not a bar to removal and is not grounds for remand to state court."); *Owens v. Credit Suisse Sec. (USA) LLC*, No. CV 15-1485, 2015 WL 6175441, at *3 (D.N.J. Oct. 20, 2015) ("Simply because a state court has concurrent jurisdiction over a federal cause of action does not render removal improper."). Consequently, the existence of concurrent jurisdiction alone is insufficient to compel remand, and the Court declines to do so on this basis.

Next, Plaintiff incorrectly asserts that the Court lacks jurisdiction over Plaintiff's state law claims. In addition to his FDCPA claim, Plaintiff asserts state law claims under the New Jersey Consumer Fraud Act ("NJCFA") and for abuse of process. (ECF No. 1-1 ¶¶ 57–66.) All Plaintiff's claims originate from the same set of facts: that Defendants engaged in "deceptive and unconscionable practices" surrounding the 2015 Foreclosure Action. (ECF No. 1-1 ¶¶ 58.) These alleged practices included attempted collection of time-barred debts, "omitted and concealed" payments, "forged and falsely acknowledged" debt assignments and notes, and a manufactured chain of title, among other assertions. (ECF No. 1-1 ¶¶ 13, 19, 25–36, 42–44.) These facts, supporting all three of Plaintiff's counts, constitute those that "derive from a common nucleus of operative fact" such that Plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Consequently, the Court has supplemental jurisdiction over Plaintiff's state law claims.

Finally, Plaintiff asks this Court to refrain from exercising supplemental jurisdiction because the two state law claims "predominate" over the sole federal claim. (ECF No. 14 at 13.) Plaintiff also argues that this case involves a localized dispute as the debt concerns New Jersey

property, the events occurred in New Jersey, and Defendants conduct their businesses in New Jersey; therefore, Plaintiff contends, the state law claims would be more appropriately addressed by New Jersey courts. (*Id.* at 12.)

Though the Court has jurisdiction over the state law claims, 28 U.S.C. § 1367(c) provides that it is within the Court's discretion whether to exercise that power. A Court may decline supplemental jurisdiction where:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). A state law claim "substantially predominates" where it "constitutes the real body of a case, to which the federal claim is only an appendage." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (citation omitted) (quoting *Gibbs*, 383 U.S. at 727). Courts determine this by looking to the (1) "proof" supporting the state versus federal claims, (2) "comprehensiveness of the remedy sought," and (3) "scope of the issues raised." *Id.* (quoting *Gibbs*, 383 U.S. at 726). Still, these factors must be weighed recognizing § 1367(c)(2) applies "only where there is an important countervailing interest" in relegating the state claims to state court. *Id.*

Plaintiff's state law claims do not substantially predominate over his federal claim. First, the evidence necessary to prove Plaintiff's alleged facts are similar for all three claims. The FDCPA targets the use of deceptive, abusive, and unlawful practices in an attempt to collect a debt. *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987). Similarly, the NJCFA targets fraudulent, deceptive, and unconscionable practices "designed to induce consumers to purchase merchandise or real estate." *S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d

370, 399 (D.N.J.), *aff'd in part*, 258 F. App'x 466 (3d Cir. 2007). Abuse of process claims, moreover, seek to remedy the "perversion of the legitimate use of process." *SBK Catalogue Partnership v. Orion Pictures*, 723 F. Supp. 1053, 1067 (D.N.J. 1989). All three claims stem from alleged wrongful actions undertaken in relation to the 2015 foreclosure case. That said, Plaintiff points to the same facts to support all three claims. Thus, nothing "suggest[s] that there is a substantial quantity of evidence supporting [his] state claims that would not be relevant to the federal claims." *Borough of W. Mifflin*, 45 F.3d at 789.

Next, Plaintiff's requested remedy does not suggest substantial predominance of the state law claims. "The remedy sought based on the state claims is the same remedy sought based on the federal claims—damages for the same set of injuries to the plaintiffs." *Id.* Therefore, this prong does not favor Plaintiff either.

Finally, looking at the scope of the issues, this factor does not favor declining to exercise supplemental jurisdiction. Plaintiff identifies that "only one of the three claims underlying [his] Complaint is based upon a federal law." (ECF No. 14 at 13.) The Court, however, must look to the "relevant interests" rather than the number of state law claims in evaluating substantial predominance. *Borough of W. Mifflin*, 45 F.3d at 789 ("The 'substantially predominate' standard, however, is not satisfied simply by a numerical count of the state and federal claims the plaintiff has chosen to assert on the basis of the same set of facts."). Plaintiff does not claim nor really suggest that his state law issues are "more important, more complex, more time consuming to resolve, or in any other way more significant" than his federal ones. *Id.* at 790. At most, Plaintiff argues these claims present a "localized dispute" and that the state court maintains concurrent jurisdiction over the federal issue. (ECF No. 14 at 10–13.) Even so, federal courts maintain a "wide latitude to decide ancillary questions of state law," especially where the federal claims remain.

*Gibbs*, 383 U.S. at 727. Being that Plaintiff's state law claims, if anything, complement his federal claim, the Court finds exercising jurisdiction over all three promotes "judicial economy, convenience and fairness to litigants." *Id.* at 726. Accordingly, the Court has jurisdiction over all of Plaintiff's claims and Plaintiff's Motion to Remand (ECF No. 14) is denied.

**B. All of Plaintiff's claims are precluded.**

Nonetheless, Plaintiff's claims fail on other grounds. As a threshold matter, the Court notes that Defendants advance numerous arguments for dismissal including claim and issue preclusion, entire controversy doctrine, New Jersey's litigation privilege, statute of limitations, and the *Colorado River* abstention doctrine. The Court need not address every one. *Ferreira v. Woodbridge Twp.*, No. 2:25-CV-10018 (ES) (AME), 2026 WL 1960809 (D.N.J. July 7, 2026) ("The Court need not address every argument raised, nor consider the arguments in the order presented by Defendants."). The Court first considers whether Plaintiff's FDCPA and NJCFA claims are precluded under claim preclusion. Because Plaintiff's claims are precluded, the Court limits the remaining analysis to Defendants' litigation privilege argument as it applies to Plaintiff's abuse of process claim. As this argument also proves dispositive, the Court need not address Defendants' remaining arguments.

**1. Plaintiff's FDCPA and NJCFA claims are barred under the doctrine of claim preclusion, also known as res judicata.**

Defendants assert that the 2024 Federal Action has preclusive effect over Plaintiff's FDCPA and NJCFA claims and are thus barred by claim preclusion. (*See* ECF No. 9-1 at 15–17; ECF No. 11-2 at 20–30; *see also* ECF No. 12-13 (Ex. M – Dismissal Order, No. 24-7142).) Plaintiff responds arguing that (1) the prior state court dismissal did not adjudicate the merits of Plaintiff's claims, (2) Plaintiff's claims arise from continuing harm not considered in the prior proceedings, and (3) both the state and federal judgments were procured by fraud—an exception

to claim preclusion. (ECF No. 20-1 at 10–14.) These arguments are unavailing and Plaintiff's claims are precluded.

Claim preclusion, also known as res judicata, prevents the same parties from relitigating a claim that has already been decided between them. *Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013). The purpose is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

In federal question cases adjudicating the preclusive effect of federal court judgments, the Court applies federal common law. *Id.*; *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Claim preclusion, under federal common law, requires "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Beasley v. Howard*, 14 F.4th 226, 232 (3d Cir. 2021) (quoting *In re Healthcare Real Est. Partners, LLC*, 941 F.3d 64, 72 (3d Cir. 2019)). Cases involve the "same cause of action" where they (1) "arise from the same transaction" or (2) "involve a 'common nucleus of operative facts.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (cleaned up) (citations omitted). All of the claim preclusion elements are satisfied today, barring Plaintiff's FDCPA and NJCFA claims.

First, the dismissal of Plaintiff's Complaint in the 2024 Federal Action constituted "a final judgment on the merits in a prior suit." (*See* ECF No. 12-13 (Ex. M – Dismissal Order, No. 24-7142).) In the 2024 Federal action, this Court dismissed Plaintiff's Complaint with prejudice. (*Id.* at 3.) Because a dismissal with prejudice operates as an adjudication on the merits, this first element has been met. *See Landon v. Hunt*, 977 F.2d 829, 832–33 (3d Cir. 1992) ("A dismissal

with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims."). Despite this, Plaintiff argues that this Court "should exercise caution" before recognizing the finality of the 2024 trial court disposition while pending appeal. (ECF No. 20-1 at 12.) The Court, however, need not do so as "a pending appeal does not vitiate the preclusive effect of a trial court judgment." *See Kokinda v. Pa. Dep't of Corr.*, 803 F. App'x 574, 577 (3d Cir. 2020). And the Third Circuit has since affirmed this Court's ruling on Plaintiff's FDCPA and NJCFA claims. *Owens v. Robertson Anschutz Schneid Crane & Partners PLLC*, No. 25-1747, 2026 WL 1506828 (3d Cir. May 29, 2026). Consequently, with respect to Plaintiff's FDCPA and NJCFA claims, the 2024 Federal dismissal amounted to "a final judgment on the merits."

Next, Plaintiff has brought this action against "the same parties or their privies." In the prior action, Plaintiff Owens brought claims against various defendants including RAS, NewRez, and DM. (*See* ECF No. 12-11 (Ex. K – Plaintiff's Amended Complaint, No. 24-7142). Thus, the parties in the instant matter are the same as those to the 2024 Federal Action.

Finally, the instant case is "based on the same cause of action" as the 2024 Federal Action. Plaintiff today asserts identical claims under the FDCPA and NJCFA based on events stemming from the 2015 Foreclosure Action. (*Compare* ECF No. 1-1 ¶¶ 51–61, *with* ECF No. 12-11 ¶¶ 79–85, 91–94 (Ex. K – Plaintiff's Amended Complaint, No. 24-7142).) All of Plaintiff's claims originate from the same set of facts: that Defendants engaged in "deceptive and unconscionable practices" surrounding the 2015 Foreclosure Action, including the attempted collection of time-barred debts, "omitted and concealed" payments, "forged and falsely acknowledged" debt assignments and notes, and a manufactured chain of title. (ECF No. 1-1 ¶¶ 13, 19, 25–36, 42–44, 58; ECF No. 12-11 ¶¶ 40–41, 43–48, 55–66, 67.) In the prior action, Plaintiff's Amended Complaint similarly asserts that Defendants, through "unconscionable (and illegal) practices,"

conspired with each other to submit fraudulent documents in order to foreclose on the subject property without standing to do so and to recoup on a debt. (ECF No. 12-11 ¶¶ 83–85, 93–94.) These claims, also stemming from Defendants' alleged actions surrounding the 2015 Foreclosure Action, supported Plaintiff's causes of action under the FDCPA and NJCFA. (*Id.*) As the same claims have been brought in both matters stemming from the same underlying facts, both cases are "based on the same cause of action." Therefore, the 2024 Federal Action precludes Plaintiff's ability to bring the instant one.

**2. Despite Plaintiff's allegations of "new and continuing conduct," his FDCPA and NJCFA claims are precluded.**

Plaintiff nonetheless asks this Court to find that claim preclusion does not apply to the events following this Court's ruling in the 2024 Federal Action on March 18, 2025. (ECF No. 20-1 at 13–14.) Plaintiff asks this Court to view those events as "new and continuing conduct," sufficient to amount to new claims for preclusive purposes. (ECF 20-1 at 13–14.) Looking to Plaintiff's Complaint, these "new acts" are comprised of Defendants' December 2025 filings including "a Final Judgment package," mortgage statements, and a promissory note; these documents all reflect mortgage nonpayment and loan ownership related to the underlying foreclosure action. (ECF No. 1-1 ¶¶ 18, 23, 32.) As support, Plaintiff relies on *Lawlor v. National Screen Service Corporation*, 349 U.S. 322 (1955). (ECF No. 20-1 at 13.) Plaintiff's reliance on *Lawlor*, however, is misplaced and his claims remain precluded.

*Lawlor v. National Screen Service Corporation* involved two damages suits brought under federal antitrust laws, alleging that the defendants' exclusive licensing practices amounted to monopolization. 349 U.S. at 324. The parties in *Lawlor* settled the first suit with prejudice prior to any findings of fact or law. *Id.* Years later, defendants allegedly "deliberately made slow and erratic deliveries of advertising materials" and committed various other acts amounting to

monopoly exploitation. *Id.* at 325. Despite the settlement, the plaintiff again sued the defendants pointing to these alleged acts. *Id.* The Supreme Court held that the continued monopolistic conduct was itself a new antitrust violation and, thus, a new cause of action for claim preclusion purposes. Plaintiff relies on this holding to salvage his claims. (ECF No. 20-1 at 13–14.)

However, the instant case is more analogous to the Third Circuit's ruling in *Foster v. Denenberg*, 616 F. App'x 472 (3d Cir. 2015). In *Foster*, the plaintiff sued alleging RICO violations, fraud, and other claims in connection with a real estate transaction; the main issue, however, involved the plaintiff's title and possession of the underlying property. *Id.* at 473. The plaintiff's prior case was dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Id.* Later, the plaintiff sued the defendants again alleging RICO violations for destruction of the same property—the subject of the prior litigation—that the plaintiff believed he owned. *Id.*

In determining the prior suit's preclusive effect, the Third Circuit explained that courts must "look to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *Id.* at 474. The Court continued, stating that "[t]he focal point of the 'same cause of action' analysis is not whether there are new facts occurring after the final judgment, but whether the *material* facts alleged in each suit are the same, and whether the witnesses and documentation required to prove the allegations are the same." *Id.* Consequently, the Court held where the subsequent action's lawfulness could not be assessed without relitigating the prior transaction, the plaintiff's claims were precluded. *Id.* at 474–75. Therefore, unlike *Lawlor*, where the later suit rested on new, independently wrongful conduct, *Foster* reasoned that post-judgment acts cannot escape preclusion when their lawfulness turns on the earlier transaction's resolution.

*Id.* It then follows that res judicata applies whenever resolving the new claims would effectively require relitigating the prior dispute: the very thing res judicata is designed to avoid.

The "new acts" Plaintiff points to would require the Court to relitigate the 2024 Federal Action. Unlike *Lawlor*, Defendants' filing of these documents does not constitute new, independently wrongful conduct. Instead, like *Foster*, the lawfulness of filing these documents depends purely upon this issue's resolution in the prior 2024 Federal Action: whether the debt-collection activities violated the FDCPA and NJCFA. Moreover, the material facts alleged in this suit supporting Plaintiff's claims are the exact same as the 2024 Federal Action. The allegations related to the December 2025 documents do not materially deviate from prior claims, requiring new evidence, new witnesses, or even separate claims to be brought. They instead provide additional support for the exact claims Plaintiff brought in 2024, and their resolution requiring the relitigation of such. Therefore, in order to "prevent[] inconsistent decisions [ and] encourage reliance on adjudication[,]" the Court finds Plaintiff's additional allegations insufficient to escape preclusion.

**3. The Court declines to set aside the 2024 Federal Action based on Plaintiff's fraud allegations.**

Finally, Plaintiff asks this Court to set aside the 2024 Federal Action's judgment based upon Defendants' allegedly fraudulent behavior occurring in procurement of and after both "this Court's March 18, 2025 dismissal order" in the 2024 Federal Action and the state court's summary judgment order entered on June 23, 2025. (*See* ECF No. 20-1 at 11–12.) The Court declines to do so as Plaintiff has not met his burden in establishing fraud upon the court.[6]

[6] Plaintiff appears to conflate causes of action for fraud and fraud upon the court. The two, however, are separate and distinct causes of action. *Herring v. United States*, 424 F.3d 384, 389 (3d Cir. 2005) ("It follows that an independent action alleging fraud upon the court is completely distinct from a motion under Rule 60(b)."); *Burton v. Horn*, No. CV 09-02435, 2018 WL 5264336, at *7 (E.D. Pa. Oct. 22, 2018) ("Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or

A determination that Defendants committed fraud upon the Court "may be justified only by 'the most egregious misconduct directed to the court itself,' and that it 'must be supported by clear, unequivocal and convincing evidence.'" *Herring v. U.S.*, 424 F.3d 384, 386–87 (3d Cir. 2005) (citations omitted); *Triffin v. Automatic Data Processing, Inc.*, 394 N.J.Super. 237, 251, 253 (2007) (directing the lower court to evaluate fraud on the court where the elements for common law fraud failed). At the Motion to Dismiss stage, Plaintiff must plausibly allege "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Id.* at 386; *Hatchigian v. Int'l Bhd. of Elec. Workers Loc. 98 Health & Welfare Fund*, 610 F. App'x 142, 143 (3d Cir. 2015) ("Fraud on the court 'must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision.'"). Plaintiff's Complaint fails to plead these elements.

The Court's preclusion analysis today rests on the judgment entered in the 2024 Federal Action, not the subsequent rulings in the state foreclosure proceedings. Plaintiff nonetheless attempts to plead fraud upon the court by alleging facts relevant only to the state court proceedings. (ECF No. 1-1 ¶¶ 31–32, 42–50, 63–64.) Any allegations concerning procurement of those state court rulings, however, would not support a claim for fraud upon this Court in the 2024 Federal Action—the action precluding the instant case. Nor does Plaintiff's Complaint connect the alleged state court misconduct to the reasons that support the federal dismissal. Accordingly, Plaintiff has not pled any elements of fraud upon *this* Court. Therefore, Plaintiff has not provided any basis for this Court to set aside the judgment in the 2024 Federal Action or refrain from applying the preclusive effect it otherwise warrants.

---

perjury.") (citations omitted). Based on the cases cited, the Court reads Plaintiff's arguments as those alleging fraud upon the court rather than fraud.

**4. Plaintiff is precluded from bringing his abuse of process claim under New Jersey's litigation privilege.**

Finally, Plaintiff's remaining abuse of process claim is barred by New Jersey's litigation privilege. Plaintiff argues that Defendants' June 23, 2025, summary judgment grant and the January 13, 2026, denial of Plaintiff's application in the underlying state foreclosure action was obtained through the "employment of forged and falsely acknowledged documents, misrepresentation, concealment of material facts, perjury, and use of judicial machinery for improper purposes." (ECF No. 20-1 at 16.) Plaintiff argues these alleged actions constituted an abuse of process unprotected by New Jersey's litigation privilege. (*Id.* at 15.) Specifically, Plaintiff argues that the privilege is not absolute, applies only to defamation actions, and does not extend to actions amounting to fraud. (*Id.* at 15.) None of Plaintiff's arguments prevail and the Court holds that the privilege bars Plaintiff's remaining abuse of process claim.

New Jersey's litigation privilege provides absolute immunity from liability for statements made in the course of judicial proceedings. *See Peterson v. Ballard*, 292 N.J. Super. 575, 581, 679 A.2d 657, 659 (App. Div. 1996). Specifically, it protects "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995) (citations omitted). This absolute protection extends beyond defamation actions to various other torts including claims for abuse of process. *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 583 (2006) (recognizing the privilege extends beyond defamation to "a host of other tort-related claims"); *Ruberton v. Gabage*, 280 N.J. Super. 125, 132–34 (App. Div. 1995) (finding the privilege barred the plaintiff's abuse of process claim). New Jersey courts have found that this expansive reading allows for a more productive judicial

process as "counsel is permitted 'full freedom of speech, in conducting the causes, and advocating and sustaining the rights' of his clients." *Loigman*, 185 N.J. at 584.

These policy goals are furthered by applying the privilege to today's case. Plaintiff alleges that the "statements" made in the underlying state action were (1) Defendant DM's unauthorized appearance as counsel on behalf of USB and (2) Defendants concealing of various documents including a "Statement of Material Facts," a PHH employee certification, and assignment instruments dated December 11, 2017, and July 24, 2019, amounting to fraud on the court. (ECF No. 1-1 ¶¶ 45–50, 42.)

Looking to the first allegation, Defendant DM's appearance on behalf of USB in the underlying state court action constitutes conduct "made in judicial or quasi-judicial proceedings" for the purpose of "achiev[ing] the objects of the litigation" and, thus, maintains "some connection or logical relation to the action." Therefore, Defendant DM's conduct meets the privilege's first, third, and fourth prongs. Regarding the second prong, rather than challenging statements made, Plaintiff appears to challenge the attorney-client relationship between Defendant DM and USB. Indeed, Plaintiff challenges the second prong relating to statements or conduct performed "by litigants or other participants authorized by law."

The Court holds that Defendant DM's appearance constituted one "authorized by law." New Jersey Courts apply a presumption that an attorney appearing on behalf of a client is acting with authority to do so. *See Boyd v. Lemmerman*, 168 A. 47, 48 (N.J. Sup. Ct. 1933) (finding amicus attorney authorized to file a motion in the case). "[T]he party asserting the lack of authority must sustain 'a heavy burden to establish that [his] attorney acted without any kind of authority[.]'" *Anne M. Trufolo Living Tr. v. Trufolo*, No. A-3961-13T3, 2015 WL 5971396, at *3 (N.J. Super. Ct. App. Div. Oct. 15, 2015); *Hill v. Mendenhall*, 88 U.S. 453, 454 (1874) ("A record which shows

such an appearance will bind the party until it is proven that the attorney acted without authority."). To dispute this relationship, Plaintiff repeatedly states "no valid attorney-client relationship existed," that Defendant DM "had no lawful authority to act on [USB's] behalf," and that Defendant DM "falsely [held] themselves out as attorneys retained and authorized by [USB]." (ECF No. 1-1 ¶¶ 46, 45.) However, Plaintiff is not a party to the relationship between Defendant DM and USB and, therefore, has no standing to challenge their attorney-client relationship. *Shire Lab'ys Inc. v. Nostrum Pharms., Inc.*, No. CIV.A. 03-4436(MLC), 2006 WL 2129482, at *6 (D.N.J. July 26, 2006) (holding that a party other than a client or former client does not have standing to seek disqualification of an adverse attorney). Consequently, in the absence of USB challenging Defendant DM's representation, Plaintiff's conclusory allegations are insufficient to challenge the attorney-client relationship. Therefore, Defendant DM's appearance constituted one "authorized by law," meeting the privilege's second prong.

Turning to the second allegation, the Court concludes that the litigation privilege also bars Plaintiff's fraud claims. In applying New Jersey law, the Court follows the New Jersey Supreme Court and, absent controlling guidance, predicts how that court would resolve the issue. *Illinois Nat. Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011). New Jersey courts have not recognized a fraud exception to the litigation privilege. *See Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 525 (D.N.J. 2012) (applying the privilege to NJCFA claims). Instead, they have emphasized the privilege's breadth, which allows attorneys "to speak and write freely without the restraint of fear," *Hawkins*, 141 N.J. at 214, and disfavored any implied abrogation, *Peterson v. Ballard*, 292 N.J. Super. 575, 586, 588 (App. Div. 1996). New Jersey Courts have also explained that "the potential harm which may result from an absolute privilege is mitigated by the comprehensive control of the trial judge, and the rules of professional

conduct which govern attorney conduct." *Id.* at 588. These principles counsel against recognizing a fraud exception, and the Court declines to do so today. Accordingly, Plaintiff's abuse of process claim is barred by New Jersey's Litigation Privilege and is hereby dismissed.

With no surviving claims, the Court declines to impose sanctions based on the alleged fraudulent conduct supporting Plaintiff's fraud and abuse of process claim. (ECF 20-1 at 16–17.) As explained, Plaintiff has failed to sufficiently allege fraud upon the Court, and his abuse of process claim is barred by New Jersey's litigation privilege. Therefore, the Court deduces no reasonable basis to impose sanctions on Defendants. *See generally Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 185 (3d Cir. 2008) ("It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court."). Plaintiff also requests that this Court impose sanctions on "Attorney Messenger, Attorney Slipakoff" and "Attorney Pack." (ECF 20-1 at 17.) None of these attorneys, however, are named as defendants in this case. (*See* ECF No. 1-1.) "Plaintiff cannot seek sanctions, in any form, against a party who has not been properly served and who is therefore not a party to the case." *Daniek v. Duda*, No. 15-6032(NLH)(AMD), 2016 WL 4435677, at *2 (D.N.J. Aug. 17, 2016) (citing *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993)). Therefore, Plaintiff's Motion for Sanctions is hereby denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 14) is **DENIED**. Plaintiff's Omnibus Cross-Motion (ECF No. 20) is **DENIED with prejudice**. Defendant Robertson, Anschutz, Schneid, Crane & Partners, PLLC's Motion to Dismiss (ECF No. 9) and Defendant Duane Morris LLP's Motion to Dismiss (ECF No. 11) are hereby **GRANTED**. An order consistent with this Opinion will be entered.

Dated: November 24, 2026

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE